### SMITH *vs.* SONNEKALB & LIEB.

In an action for rent, the defence was, that the premises were destroyed, or rendered unfit for occupancy, by fire. It appeared that there was a sub-tenant of a part of the premises, whose tenancy had not expired. There was no proof that he had surrendered the premises to the lessees, or to the lessors, or consented that the former might surrender his term, as well as their own, to the latter. *Held* that under these circumstances there could not be a surrender of possession of the entire premises, by the lessees, so as to absolve them from payment of rent, under the act of 1860, (*Laws of* 1860, *ch.* 345.) That, to sustain the defence, it was incumbent upon the defendants to show a substantial surrender of the whole premises.

APPEAL, by the plaintiff, from a judgment entered upon a verdict, and from an order denying a motion for a new trial.

The action was brought to recover rent of the defendants as assignees of a lease executed by West & Robeson of premises known as 21 Park Place, in the city of New York, to one Lewis A. Osborn. The defendants, on becoming assignees of the lease, assumed the payment of the rent reserved in the lease, and the performance of the covenants and agreements of Osborn, therein contained.

The defendants, by their answer, admitted the execution of the lease to Osborn, and its assignment to them, but denied the occupation of the premises. They alleged that the premises were destroyed by fire, or so injured by fire as to be untenantable and unfit for occupancy; and that thereupon they quit and surrendered possession to the landlords, and had not since occupied the same.

On the trial it appeared that a fire had occurred in adjoining premises, by which the demised premises had been somewhat injured, some windows broken and the paint smoked and blackened, but the defendant Lieb testified that no part of the demised premises was burnt by fire. The defendants claimed, however, that the proof showed the destruction of the premises, for all purposes of occupancy or business. It appeared also that, at the time of the fire, part of the

Smith *v.* Sonnekalb.

premises were held by Lewis A. Osborn, under a sub-lease from defendants, and that his rent was paid in advance for several months. Also that the defendants never surrendered the premises to their landlord; that Osborn never surrendered; that after the premises were repaired, the defendants authorized their landlords to lease the premises on their account.

The judge charged the jury that the only two questions they had to consider were:

"First. Whether the building was so injured by the elements as to be untenantable? The witness, Mr. Sonnekalb, and his partner, Mr. Lieb, say positively they were untenantable, and they describe to you the condition of the premises after the fire. It is for you to determine whether they were or not.

The next question for you to consider is, whether they were surrendered? or, in other words, whether the lessors got possession of the premises? for that I hold to be the same thing. In my opinion it does not signify whether the lessee formally surrendered the premises, if the lessors got possession of the premises. It appears to me there is but little doubt about that; but it is for you to determine, because it is matter of fact. It appears by their own notice that they had a possession of about three months in repairing the premises. This notice was written in September, in which they state that the 'premises now are in a fit condition for the tenant,' so they must have been in possession of the premises to have them repaired.

On the other hand, the plaintiff shows that Sonnekalb, one of the defendants, authorized Mr. West to lease the premises, and West wished him to sign a paper to that effect, but Sonnekalb refused, and said he wished to see his lawyer first. That is not conclusive; still it is for you to consider how far it goes to contradict the testimony of the other side.

The amount of the rent from the first of June to the first

of November is $833.33.   The interest is $17.65.   There-
fore, if you find for the plaintiff, your verdict will be
$850.98.

The plaintiff's counsel has also asked me to charge
you—

1st. That unless the defendant surrendered posses-
sion of the premises to the lessors, West & Robeson,
the plaintiff is entitled to a verdict.

I have already said all I intend to say on that subject;
that I think a formal surrender is not necessary if the
lessors got possession of the building.   (Plaintiff's
counsel excepted.)   2d. That unless the sub-tenant Os-
born surrendered possession, the plaintiff is entitled to
a verdict.   I say no to that.   (Plaintiff's counsel ex-
cepted.)   3d. That if the defendant Sonnekalb author-
ized the plaintiff's assignors to relet the premises, the
plaintiff is entitled to a verdict.   I say no to that."
(Plaintiff's counsel excepted.)   The plaintiff's counsel
also excepted to that portion of the charge in which the
judge charged that it was not necessary to make a
formal surrender of the premises, if the lessors got pos-
session of the premises; also to that part of the charge
which stated that it did not signify whether the lessees
formally surrendered the premises, if the lessors got
possession of the premises.   Also to that part of the
charge which stated that the justice held it was the
same thing, whether the premises were surrendered or
the lessors got possession of them.

Under the charge of the court the jury found a ver-
dict for the defendants.

A motion was subsequently made, upon the excep-
tions taken by the plaintiff, for a new trial, which was
denied.

*S. B. Brownell*, for the appellant.   I. The judge's
charge and refusals, as excepted to, are erroneous.
The defendants' defence arises under the statute of 1860,

Smith v. Sonnekalb.

which is as follows: "The lessees or occupants of any building which shall, without any fault or neglect on their part, be destroyed or be so injured by the elements or any other cause as to be untenantable and unfit for occupancy, shall not be liable or bound to pay rent to the lessors or owners thereof after such destruction or injury, unless otherwise expressly provided by written agreement or covenant, and the lessees or occupants may thereupon quit and surrender possession of the leasehold premises, and of the land so leased or occupied." (*Laws of* 1860, *p.* 592, *ch.* 345.) The statute is in derogation of the common law, and must be strictly construed. By the common law the total destruction by fire of a building did not affect the tenant's liability to pay, nor the lessor's right to recover, rent. This statute was enacted for the benefit and relief of a tenant, and put it in his power to decide whether he would put an end to his lease and term. After the injury the lessor can do no act, and make no decision. He is simply a passive and helpless spectator of the injury, and after such injury, unless the lessee quit and surrender possession, the lessor can take no possession and in no manner resume the premises. There are, therefore, two things which the lessee must do, if he decide it is for his interest and advantage to take the benefit of the statute. He must quit *and* surrender possession of the leasehold premises. The term surrender is well known to the law, and means a yielding up of an estate for life or years to him that hath the immediate estate in reversion or remainder. (4 *Kent*, 118, *citing Springstien* v. *Schermerhorn*, 12 *John.*, 357. *Schieffelin* v. *Carpenter*, 15 *Wend.*, 400.) Notwithstanding any injury to the demised premises, the lessee has the absolute right to retain the possession and the term, and to retain the term although he quit the possession. His quitting or abandoning the premises is not equivalent to surrender-

ing possession. The error of the judge's charge, and his refusal to charge as requested, confounded the two terms, and thereby misled the jury to the plaintiff's injury. There is no evidence whatever that the defendants surrendered possession to the landlord. On the contrary, it was shown that they never saw or communicated with the lessors for weeks after the fire, nor until the premises were fully *repaired* and the lessees authorized them to relet the premises on their account.

II. The defendants could not avail themselves of the statute. They had sublet a portion of the demised premises to Osborn, and had therefore put it out of their power to quit or surrender the premises. The plaintiff's request to charge, that unless Osborn, the sub-tenant, surrendered the possession of the premises, the plaintiff was entitled to a verdict, was correct, and the judge's refusal was error, for which the judgment should be reversed. The defendants' liability upon their lease was absolute, unless they proved their defence. The *onus* lay upon them to prove the surrender. It is clear that nothing was done or said, or could be said or done by the defendants, which gave to the lessors the right to the whole of the demised premises discharged of the lease under which Osborn held at the time of the fire. *Johnson* v. *Oppenheim* (12 *Abb. Pr., N.S.*, 449,) is a decisive authority.

*Chauncey Shaffer*, for the respondents. I. The defendants' answer contains two valid defences to this action. 1. That Albert H. Smith is not the plaintiff in interest, but West & Robeson are. 2. The destruction of the premises by the element commonly called "fire," so as to be untenantable and unfit for occupancy, and the quitting and surrendering of said premises by the defendants to West & Robeson.

II. The proof establishes both defences, and particu-

larly the second defence. (*Sess. Laws of* 1860, *p.* 593, *ch.* 345.) 1. The lessees left the key of the premises and quit possession thereof, and West & Robeson took the key and took possession of the premises, and have ever since kept both. It is true that after the latter had spent about three months, they tried to force the key and a new agreement back upon the defendants, but without success. (*Smith* v. *Devlin*, 23 *N. Y.*, 363.) 2. West & Robeson will not be permitted to assert that they were trespassers and avail themselves of their own wrong. (1 *Greenl. Ev.*, § 435 *and* § 440, *note* 3, § 447. *Bird* v. *N. Y. Central R. R.*, 320. *De Witt* v. *Bailey*, 17 *N. Y.*, 340, 344. *Moorehouse* v. *Matthews*, 2 *id.*, 514, 616. *Robertson* v. *Knapp*, 35 *id.*, 91. *Seamans* v. *Smith*, 46 *Barb.*, 320. *Whitbeck* v. *N. Y. Central R. R.*, 36 *id.*, 644–8. *Polk* v. *Coffin*, 9 *Cal.*, 56. *Baltimore & Ohio R. R. Co.* v. *Thompson*, 10 *Md.*, 76. 1 *Smith's Lead. Cas.*, 286, *note.* 3 *Fairfield*, 222.)

III. No one of the plaintiff's exceptions is well taken.

*By the Court,* DAVIS, J. As the case appeared on the trial, we think it was incumbent on the defendants to show a substantial surrender of the whole of the premises. There was a total failure to show that Osborn, who was entitled to an office in the building, for which he had paid rent in advance for six months from the 2d day of April, 1868, to the defendants, had ever surrendered to them or to the landlords, or consented that the former might surrender his term as well as their own, to the latter. Osborn's tenancy had not expired when the repairs were completed. So far as the case shows, there was nothing to prevent him from claiming and enjoying the remainder of his term.

It was error, therefore, to rule as the learned judge did upon the question of his rights; and without pass-

ing upon the other questions in the case, we think there must be a new trial.

New trial granted.

[FIRST DEPARTMENT, GENERAL TERM at New York, November, 1873. *Ingraham* and *Davis,* Justices.]